UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-533-F

| CHARLES BENZING, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| THARRINGTON-SMITH, LLP, | ) |  |
| ALICE C. STUBBS,. | ) |  |
| KATEY M. REGAN, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

This matter is before the court on the Motion to Dismiss [DE-8] filed by Defendants Alice S. Stubbs and Tharrington Smith, LLP.

## I. PROCEDURAL AND FACTUAL HISTORY

The *pro se* Plaintiff initiated this action by filing an Application to Proceed without Prepayment of Fees [DE-1] on November 24, 2010. On December 30, 2010, Plaintiff filed additional documentation in support of his proposed complaint [DE-3]. Plaintiff paid the required filing fee on April 5, 2011, and the Complaint [DE-4] was filed.

In the Complaint, Plaintiff alleges that his former girlfriend, Defendant Katey M. Regan, filed a motion for a domestic violence protective order on April 6, 2009. Compl. [DE-4] ¶ 10. He alleges that the following day, a background check was performed by the Castle Branch Employment Screening Company at the request of Defendant Tharrington Smith, LLP, under the guise of pre-employment screening. *Id.* ¶¶ 11-12. Plaintiff contends he did not give permission for such screening, and that the use of his social security number in connection with the screening was illegal. *Id.* ¶ 14. He alleges the information obtained in the screening was later

used in connection with the hearing on the motion for protective order and in subsequent child custody hearings. *Id.* ¶ 17. The documents Plaintiff later filed in support of the Complaint include a "Results Summary" bearing the header "Castle Branch employment screening" on each page and listing court cases which may have involved Plaintiff in Allegheny County, Pennsylvania [DE-3].

Plaintiff alleges that Defendant Alice C. Stubbs, who practices with Defendant Tharrington Smith and represented Defendant Regan in state court proceedings against Plaintiff, provided Regan with the information obtained in the employment screening. *Id.* ¶¶ 18-19. According to Plaintiff, Regan and Stubbs used this information against him in court on several occasions. *Id.* ¶ 21. Plaintiff also alleges that Regan provided a portion of the employment screening to one of Plaintiff's former business partners, Jenifer Mills, with the intent to damage his name and reputation. *Id.* ¶ 22.

Plaintiff alleges three claims: (1) "Federal Crime," (2) "Distribution of Non-Public Information," and (3) "Slander and Defamation."

On May 25, 2011, Defendants Alice Stubbs and Tharrington Smith filed the instant motion to dismiss. Plaintiff has responded, and it is ripe for ruling. Nothing in the record indicates that Defendant Katey Ragan has been served in this action.

## II. STANDARD OF REVIEW

"The district courts of the United States are courts of limited subject matter jurisdiction." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005)). Generally, a district court only has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the

United States ("federal question jurisdiction"), 28 U.S.C. § 1331, or claims for more than $75,000.00 where the parties are citizens of different states ("diversity jurisdiction"), *id.* § 1332.

A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the defendant presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the defendant presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). "[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id.* at 193 (citing *Jadhav*, 555 F.3d at 348). In both situations, the burden rests with the plaintiff to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Even if a court has subject matter jurisdiction over an action, Rule 12(b)(6) allows a court to dismiss an action which fails to state a claim on which relief may be granted. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[1] However, the "

---

[1] The court may also consider documents referred to in and explicitly relied upon in a complaint, so long as the parties do not challenge the authenticity of the document. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, ___U.S. ___, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). When considering a motion to dismiss, the court must keep in mind that " a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the courts obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

### III. ANALYSIS

At the outset, the court notes that Plaintiff does not allege a basis for subject matter jurisdiction in this court. Nevertheless, it is apparent from the Complaint that this court does not have diversity jurisdiction over this action. All the parties are citizens of North Carolina, preventing this court from exercising jurisdiction under 28 U.S.C. § 1332.

Accordingly, for this court to have federal question jurisdiction, Plaintiff must allege a "colorable claim 'arising' under the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006)(citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)). Defendants

Alice Stubbs and Tharrington Smith argue Plaintiff has failed to do so, and specifically take aim at his first claim for relief entitled "Federal Crime."

## A. First Cause of Action: Federal Crime

Defendants argue that Plaintiff fails to state a claim under the only federal statute referenced in his first claim for relief: the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

The FCRA allows access to a consumer's credit report only for specified permissible purposes. *Cappetta v. GS Servs. Ltd. P'ship*, 654 F.Supp.2d 453, 457 (E.D. Va. 2009). Under the FCRA, a credit reporting agency may provide a consumer's credit report:

> To a person which it has reason to believe . . . intends to use the information for employment purposes . . . or . . . otherwise has a legitimate business need for the information (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(3)(B) & (F). The statute mandates that "[a] person shall not use or obtain a consumer report for any purpose unless–(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified . . . by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f). Accordingly, "where a user either willfully or negligently obtains a consumer's credit report without a permissible purpose, the user is civilly liable to the consumer." *Capetta*, 654 F.Supp.2d at 461 (footnote omitted); 15 U.S.C. §§ 1681n-1681o.

To state a claim for willful or negligent misuse or acquisition of a consumer report under the FCRA, a plaintiff must allege facts showing each of the following: (i) there was a consumer report; (ii) the defendants used or obtained it, (iii) the defendants did so without a permissible statutory purpose, and (iv) the defendants acted with the specified culpable mental state.

*Shepherd-Salgado v. Tyndall Federal Credit Union*, No. 11-0427-WS-B, 2011 WL 5401993 at *3 (Nov. 7, 2011, S.D. Ala.); *Capetti*, 654 F.Supp.2d at 461 (stating that a plaintiff could state a claim under the FCRA if she has alleged that the defendant either willfully or negligently obtained her credit report without a permissible statutory purpose). Defendants contend Plaintiff's FCRA claim must be dismissed because he has failed to allege sufficient facts to show that either defendant obtained a "consumer report" without a permissible statutory purpose. The court disagrees. A fair reading of the complaint, and the later-attached documents[2], allows the court to infer that Plaintiff alleges that Stubbs and/or Tharrington Smith obtained a report ostensibly to be used for employment screening when, in fact, it was obtained to be used against Plaintiff in litigation. The court will address each of Defendants' arguments in turn.

### 1. Plaintiff sufficiently alleges that Defendants obtained a "consumer report"

Defendants first argue that Plaintiff fails to allege any facts showing that the information obtained from Castle Branch Employment Screening Company constitutes a "consumer report." Under the FCRA, a consumer report is defined as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title [subject to various exclusions].

15 U.S.C. § 1681a(d)(1). As the foregoing definition demonstrates, a consumer report is made up of three elements: (1) information communicated by a consumer reporting agency; (2) bearing on any one of a list of factors, and (3) that is used or expected to be used or collected in

---

[2] No party contests the authenticity of the documents.

whole or in part for any one of several purposes. *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1323 (11th Cir. 1998). The allegations in the complaint satisfy each of the three elements.

First, the allegations in the Complaint–and the later-attached document–give rise to the plausible inference that Castle Branch is a consumer reporting agency. The FCRA defines "consumer reporting agency" to mean

> any person which, for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Here, Plaintiff alleges that Defendants requested that Castle Branch Employment Screening Company perform a background check on him. The name "Employment Screening Company" implies that Castle Branch is a company that regularly engages, in exchange for a fee, in the practice of assembling information for use by third parties to evaluate job applicants. This is buttressed by the description of Castle Branch on the last page of the "Results Summary," wherein Castle Branch states it "has been helping businesses make safe and informed employment hiring decisions for over a decade." *See* Results Summary p. 6 [DE-3]. These details give rise to the plausible inference that Castle Branch, in exchange for a fee, regularly engages in the practice of assembling information for use by third parties to evaluate job applicants. *See also Adams v. Nat'l Eng'g Serv. Corp.*, 620 F.Supp.2d 319, 328 (D. Conn. 2009)(finding that a staffing agency that, in exchange for a fee, assemble and evaluates background investigation reports on job candidates for third parties was a "consumer reporting agency").

Second, the information contained in the Castle Branch results summary–court records from Allegheny County, Pennsylvania–bears on Plaintiff's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). Although Defendants contend that the compiled information constitutes "public information," this court agrees with commentary from the Federal Trade Commission ("FTC") which explains that "[p]ublic record information relating to the records of arrest, or the institution or disposition of civil or criminal proceedings, bears on" a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations*, 21-22 (2011)(citing 1990 commentary on the Fair Credit Reporting Act, Appendix to Part 600, comment 603(d)-4E), *available at* http://www.ftc.gov/statutes/fcrajump.shtm. *Cf. Lewis v. Ohio Prof'l Elec. Network, Llc*, 190 F.Supp.2d 1049, 1062 (S.D. Ohio 2002)(finding that the transmission of public arrest information satisfies the definition of "consumer report" and remarking that "a negative criminal history . . . has some bearing on an individual's character and general reputation").

Finally, Plaintiff has alleged sufficient facts to give rise to the inference that Castle Branch compiled the information expecting it to be used for employment purposes, a permissible purpose under the FCRA. *See, e.g., Ippolito v. WNS, Inc.*, 864 F.2d 440, 449 (7th Cir. 1988)(a report may be a consumer report if the consumer reporting agency preparing the report "expects" the report to be used for one of the purposes set forth in the CRA). Again, the "Results Summary" bears "Castle Branch employment screening" on the header of each page. The last page contains instructions for "Viewing a Background Check" and Castle Branch's assertion that

8

the company "provides employers with tools to make informed hiring decisions, avoid costly litigation, and enhance productivity." Results Summary p. 6 [DE-3]. The impression taken from these details is that the "Results Summary" was prepared with the expectation that it would be used in making a hiring or other similar employment-related decision.

In sum, Plaintiff's allegations in the Complaint, combined with the "Results Summary," allows the plausible inference that Alice Stubbs and/or Tharrington Smith obtained a consumer report about Plaintiff.

### 2. Plaintiff sufficiently alleges Defendant obtained the report without a permissible purpose

Plaintiff alleges that Tharrington Smith, "under the guise of a pre-employment screening," requested that Castle Branch perform a background check on him. Compl. ¶ 11 [DE-4]. He further alleges that Defendants used the information obtained through the background check during domestic violence and child custody court proceedings, and that Alice Stubbs and/or Tharrington Smith distributed the results to Defendant Regan. *Id.* ¶¶ 17-19, 21.

If Plaintiff's allegations are taken as true, then it appears Tharrington Smith's and/or Alice Stubbs' real reason for obtaining the consumer report was to use it against Plaintiff in state court proceedings. Courts have held that a consumer report cannot be used by feuding parents in child custody disputes or other similar domestic proceedings. *See Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 969, 971-72 (holding it impermissible to obtain ex-spouse's credit report to compare current accounts with former joint accounts); *Cole v. American Family Mut. Ins. Co.*, 410 F.Supp.2d 1020, 1023 (D. Kan. 2006)(rejecting argument that husband had a permissible purpose under the FCRA where he obtained credit reports to be used in divorce proceeding); *Rodgers v. McCullough*, 296 F.Supp.2d 895, 901 (W.D. Tenn. 2003)(noting

9

that the FCRA does not permit an individual to obtain a consumer report for purposes of obtaining child custody and instituting child support payments). Plaintiff's allegations are sufficient to state that Tharrington Smith and/or Alice Stubbs obtained the report without a permissible purpose under the FCRA.

### 3. Plaintiff's allegations are sufficient to state a claim for a willful violation of the FCRA

As the preceding analysis shows, Plaintiff has alleged sufficient facts to show that Tharrington Smith and/or Alice Stubbs obtained a consumer report on Plaintiff without a permissible statutory purpose. Defendants Tharrington Smith and Alice Stubbs, nevertheless, argue that any claim under the FCRA be dismissed because Plaintiff does not specifically state whether Defendants negligently or willfully failed to comply with the statute.

It is true that Plaintiff does not specifically state whether he is seeking damages under 15 U.S.C. § 1681n(a) for a willful violation or § 1681o(a) for a negligent violation.[3] Plaintiff's allegations, however, that Tharrington Smith and Alice Stubbs procured the consumer report "under the guise" of the pre-employment screening indicates that Plaintiff is seeking relief under

---

[3] Tharrington Smith and Alice Stubbs contend that Plaintiff may have another claim pursuant to 15 U.S.C. § 1681n(b). The plain text of the statute, however, reveals that § 1681n(b) allows a *consumer reporting agency* to seek damages from a person who obtains a consumer report from the consumer reporting agency without a permissible purpose or under false pretenses. *Id.* at § 1681n(b)("Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.").

Additionally, it does not appear that the "impermissible purpose" and "false pretenses" theories, at least when applied to this case, constitute separate claims. *See Tyndall Federal Credit Union*, 2011 WL 5401993 at *3 (explaining the plaintiff's claims that defendants obtained her credit report without a proper purpose and by using false pretenses did not constitute "distinct violations of the FCRA, but are instead intertwined as a single claim for relief under the statutory scheme")

10

§ 1681n(a) for a willful violation. It is difficult to comprehend how one could "negligently" offer up a false purpose to a consumer reporting agency.

Based on the foregoing, and in light of the liberal interpretation accorded to pleadings drafted by *pro se* litigants, the court is constrained to find that Plaintiff has stated a claim for relief pursuant to 15 U.S.C. § 1681n(a). The evidence eventually may show that the "Results Summary" is not a consumer report, or that Tharrington Smith and/or Alice Stubbs had a permissible purpose under the FCRA for obtaining a consumer report on Plaintiff, or that the facts of this case do not come within the ambit of the FCRA. At this juncture, however, the court must allow the claim to go forward.

Having concluded that Plaintiff has stated a colorable claim under the FCRA, the court finds that it has federal question jurisdiction over this action. The court will now turn to the arguments that Plaintiff's second and third claims should be dismissed for failure to state a claim.

**B. Distribution of Non-Public Information and Slander and Defamation**

Defendants contend that Plaintiffs' second and third causes of action, denominated "Distribution of Non-Public Information" and "Slander and Defamation," must be dismissed. The court agrees.

Plaintiff's second cause of action must be dismissed because North Carolina does not recognize a claim for invasion of privacy by publication of true but "private" facts. *Hall v. Post*, 323 N.C. 259, 260, 372 S.E.2d 711, 712 (1988). Plaintiff does not allege that any information disclosed by Defendants was false. Accordingly, he cannot state a tort claim for disclosure of the information, and the second cause of action is DISMISSED.

11

Plaintiff's third cause of action fails for the same reason. To be actionable as either libel or slander, a defamatory statement must be false. *Daniels v. Metro Magazine Holding, Co., LLC*, 179 N.C. App. 533, 538-39, 634 S.E.2d 586, 590 (2006). Plaintiff fails to allege that any of the information imparted was false, and consequently his third cause of action is DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss [DE-8] filed by Defendants Tharrington Smith and Alice Stubbs is ALLOWED in part and DENIED in part. Plaintiff's second and third causes of actions against all Defendants are DISMISSED. The Clerk of Court is DIRECTED to continue the management of this case.[4]

SO ORDERED.

This the 19th day of January, 2012.

James C. Fox
Senior United States District Judge

---

[4] Because Plaintiff does not appear to assert his first claim for relief–the only remaining in this action–against Defendant Katey Regan, the court will not issue a notice to Plaintiff concerning his failure to file proof of service as to her.

12